**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **B.H.**, *an individual*, | |
| **Plaintiff,** | **Civil Action No. 24-8851 (GC) (TJB)** |
| **v.** | |
| **JSK PRINCETON LLC,** | |
| | **MEMORANDUM OPINION** |
| **Defendant.** | |

**BONGIOVANNI, United States Magistrate Judge**

This matter comes before the Court upon Defendant JSK Princeton LLC's ("Defendant")

Motion for Leave to File a Third-Party Complaint. (Docket Entry No. 22.)   Plaintiff B.H.

("Plaintiff") opposes Defendant's motion. (Docket Entry No. 24, "Opp'n Br.")   The Court has

fully reviewed the arguments made in support of and in opposition to Defendant's motion. The

Court considers Defendant's motion without oral argument pursuant to Federal Rule of Civil

Procedure ("Rule") 78(b) and Local Civil Rule 78.1(b).  For the reasons set forth more fully below,

Defendant's Motion for Leave to File a Third-Party Complaint is **GRANTED, in part, and**

**DENIED, in part**.

## I.    FACTUAL BACKROUND AND PROCEDURAL HISTORY[1]

On August 29, 2024, Plaintiff initiated this action under the Federal William Wilberforce

Trafficking Victims Protection Reauthorization Act of 2008, 18 U.S.C. § 1595 ("TVPRA" or the

---

[1] As the parties are familiar with the nature and history of this action, the Court only recites
herein the procedural and factual background relevant to Defendant's pending motion.

"Act"). (Docket Entry No. 1, "Compl.") In her Complaint, Plaintiff alleges that she is a victim of sex trafficking and submits that, pursuant to the TVPRA, she may sue her "perpetrators" or "whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of [the TVPRA]." (*Id.* ¶¶ 4-7.) To this end, Plaintiff sues Defendant under the theory that Defendant "knowingly benefit[ed], financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of [the TVPRA]." (*Id.* ¶ 31 (citing 18 U.S.C. § 1595(a).)

On August 15, 2025, Defendant filed its instant motion. (Docket Entry No. 22.) In the same, Defendant requests leave to file a Third-Party Complaint against Norieaye Essence a/k/a Ashley Gardener ("Gardener"); Breon Mickens ("Mickens"); High Hotels, LTD d/b/a Courtyard By Marriot Ewing Princeton ("Courtyard"); SSN Ewing LLC d/b/a Element by Westin Ewing/Princeton ("Element"); TADCO LLC d/b/a Ramada by Wyndham Bordentown d/b/a Town Inn ("Ramada"); Newcastle Lodging Corp d/b/a The Howard Johnson by Wyndham Princeton/Lawrenceville ("Howard Johnson"); and ABC CORPS. #1-5 (collectively, the "Third-Party Defendants").[2] (Docket Entry No. 22-1 ("Def.'s Br.") at 1; Docket Entry No. 26.)

---

[2] On November 13, 2025, Defendant filed a supplemental letter to its pending Motion for Leave to File a Third-Party Complaint. In its letter, Defendant claims that "discovery received pursuant to subpoenas served by [Defendant] has identified two additional hotels where Plaintiff alleges that she was trafficked." (Docket Entry No. 26 at 2.) According to Defendant, "On January 12, 2018, Plaintiff informed the New Jersey State Police that within the three months prior, Gardener also 'had' Plaintiff at (1) the Ramada Inn in Bordentown, and (2) the Howard Johnson's in Lawrenceville." (*Id.*) Accordingly, Defendant seeks to implead Ramada and Howard Johnson to this action, relying on the same arguments raised in support of its Motion for Leave to File a Third-Party Complaint. For the sake of judicial efficiency, and considering the uniformity of Defendant's underlying arguments, the Court shall consider Ramada and Howard Johnson under the pending motion. Courtyard, Element, Ramada, and Howard Johnson are herein collectively referred to as the "Third-Party Hotel Defendants."

Specifically, Defendant seeks to assert claims of contribution and common law indemnification against the proposed Third-Party Defendants. (Def.'s Br. at 2-3.)

On September 12, 2025, Plaintiff filed opposition to Defendant's motion, to which Defendant replied on September 19, 2025.  (Docket Entry Nos. 24-25.)

## II.    LEGAL STANDARD

Pursuant to Rule 14, "[a] defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it." Fed. R. Civ. P. 14(a)(1). "The purpose of Rule 14(a) is to avoid circuity of action and multiplicity of litigation." *Spencer v. Cannon Equip. Co.*, Civ. No. 07-2437, 2009 WL 1883929, at *2 (D.N.J. June 29, 2009) (citations omitted).  "A third-party claim may be asserted under Rule 14(a) only when the third-party's liability is in some way dependent on the outcome of the main claim or when the third-party is secondarily liable to defendant." *F.D.I.C. v. Bathgate*, 27 F.3d 850, 873 (3d Cir. 1994). That is, "[a] third-party plaintiff's claim must present a theory upon which the third-party defendant can be liable to the third-party plaintiff under some theory of secondary liability, i.e., indemnification, contribution, or some other theory of derivative liability recognized by relevant substantive law." *Meehan v. Bath Auth., LLC*, Civ. No. 18-17444, 2021 WL 130483, at *1 (D.N.J. Jan. 14, 2021) (citation and internal quotation marks omitted).

Under Rule 14, when a third-party complaint is not filed within 14 days after a defendant's service of its original answer, the third-party plaintiff must, by motion, obtain the court's leave to file a third-party complaint.  Fed. R. Civ. P. 14(a)(1).  "[L]eave to [implead] should be freely given when justice so requires." *Panchisin v. Torres*, Civ. No. 11-5144, 2012 WL 5880346, at *2 (D.N.J. Nov. 20, 2012) (citing *Spencer,* 2009 WL 1883929, at *2-3).  Yet, "leave to . . . implead a third-party [is] not automatic." *Id.*

3

To determine whether leave should be granted, courts consider the following factors: "(1) the timeliness of the motion; (2) the probability of trial delay; (3) the potential for complication of issues at trial; and (4) prejudice to the original plaintiff." *Spencer*, 2009 WL 1883929, at *2 (citation and internal quotation marks omitted); *Igenomix, LLC v. Senergene Sols., LLC*, Civ. No. 21-20495, 2023 WL 4744283, at *3 (D.N.J. July 25, 2023) (quoting *Meehan,* 2021 WL 130483, at *2). "Superimposed upon these factors are the overarching principles that 'Rule 14 is [intended] to reduce multiplicity of litigation,' and it therefore is entitled to liberal construction." *Hawkins v. Waynesburg Coll.*, Civ. No. 07-5, 2007 WL 2119223, at *3 (W.D. Pa. July 20, 2007); *see also Hitachi Cap. Am. Corp. v. Nussbaum Sales Corp.*, Civ. No. 09-731, 2010 WL 1379804, at *7 (D.N.J. Mar. 30, 2010).  In addition to the foregoing factors, the Court must also consider whether the third-party claims are "obviously unmeritorious."  *Ernest Bock & Sons, Inc. v. Dean Enterprises, Inc.*, Civ. No. 22-4739, 2023 WL 4268250, at *2 (D.N.J. June 29, 2023) (citing *Wilson v. Beekman*, 198 F. App'x 239, 241 (3d Cir. 2006) (citation omitted)); *see Ryan v. Collucio*, 183 F.R.D. 420, 423 (D.N.J. 1998) (analyzing motion for leave to file a Third-Party Complaint under a futility standard).

"[T]he decision to permit joinder rests with the sound discretion of the trial court." *Spencer*, 2009 WL 1883929, at *2 (citation omitted).

### III.    DISCUSSION

Notably, Plaintiff does not oppose Defendant's motion on grounds of untimeliness, probability of trial delay, the potential for complication of issues at trial, or prejudice. Nevertheless, before turning to the merits of Defendant's third-party claims, the Court addresses each factor in turn.

4

### A. Timeliness of Motion

On July 16, 2025, the Court entered an Order granting Defendant's request to set August 15, 2025, as the deadline to file its Motion for Leave to File a Third-Party Complaint. (Docket Entry No. 21.)  As noted, Defendant filed its motion on August 15, 2025.  Defendant's motion is timely.

### B. The Probability of Trial Delay

"[D]elay is inevitable in most if not all Rule 14 situations[.]" *Spencer*, 2009 WL 1883929, at *4.  However, "[i]f the inevitable delay and complexity were dispositive considerations . . . few Rule 14(a) motions would be granted." *Id.*  Therefore, both factors "must be weighed against the alternative prospect of two separate trials and the need for attempting to coordinate, and in the end possibly consolidate, the matter for the sake of judicial economy." *Id.*; *Hickerson-Cooper v. Dollar Gen. Corp.*, Civ. No. 22-5755, 2024 WL 2874035, at *4 (D.N.J. June 7, 2024).

Generally, courts in this jurisdiction have found that trial delay exists where fact discovery has closed, and impleader would require the discovery process to be reopened.  *Compare Hercules Inc. v. Del. Valley Scrap Co.*, Civ. No. 08-4391, 2009 WL 10690434, at *1 (D.N.J. Sept. 23, 2009) ("[G]ranting this motion will in no way delay trial as a trial date has not been set and the discovery deadlines can be extended."), *with Meehan*, 2021 WL 130483, at *2 (finding that the potential for trial delay existed where fact discovery had closed, and impleader would, in essence, "[return] the parties to the beginning of the discovery process"), *and Campbell v. New Jersey Transit Rail Operations Inc.,* Civ. No. 17-5250, 2021 WL 5413983, at *3 (D.N.J. Nov. 18, 2021) (finding that trial delay existed where fact discovery had closed, and the discovery process would have to be reopened).  Here, discovery is ongoing, and no pretrial conference date or trial date has been set. The Court finds that any potential trial delay is *de minimis* and does not bar Defendant's Third-

5

Party Complaint.

### C.  The Potential for Complication of Issues at Trial

"[I]mpleading a third party will add some level of complexity to the trial." *Mechin v. Carquest Corp.*, Civ. No. 07-5824, 2010 WL 3259808, at *7 (D.N.J. Aug. 17, 2010) (citing *Hitachi Capital Am. Corp.*, 2010 WL 1379804, at *6).  As noted, "[c]onsiderations involving the inevitable consequences of joinder, including greater trial complexity, 'must be weighed against the alternative prospect of two separate trials and the need for attempting to coordinate, and in the end possibly consolidate, the matter for the sake of judicial economy.'" *Id.* (citing *Spencer,* 2009 WL 1883929, at *4).

Defendant seeks to bring third-party claims for contribution and indemnification.  As Defendant's third-party claims against the Third-Party Defendants involve the same—or similar— factual circumstances as alleged in Plaintiff's Complaint and do not substantially complicate the legal issues involved in this case, the Court finds that allowing Defendant to file its proposed Third-Party Complaint would not unnecessarily complicate the issues at trial.  This factor therefore weighs in favor of impleader.

### D.  Prejudice to Original Plaintiff

Plaintiff fails to articulate any basis for prejudice. Even under its own consideration, the Court does not find that Plaintiff would suffer prejudice if impleader were granted.  "Prejudice must be 'undue' and rise to the level that the non-moving party would be 'unfairly disadvantaged or deprived of the opportunity to present facts or evidence[.]'" *Panchisin*, 2012 WL 5880346, at *3.  This is not the case here, where Defendant's motion is timely, will not result in a trial delay, and will not substantially complicate the issues in the action.

6

Lastly, the Court notes that if Defendant was denied leave to add the Third-Party Defendants to this action, additional lawsuits may result and arise out of Plaintiff's alleged trafficking.  As mentioned, "[t]he purpose of Rule 14(a) is to avoid circuity of action and multiplicity of litigation." *Spencer*, 2009 WL 1883929, at *2.  Thus, to allow impleader here would promote the core of Rule 14(a)'s purpose. This fact further militates in favor of impleader.

In considering the four applicable factors, as well Rule 14(a)'s overarching purpose, the Court finds that all weigh in favor of granting impleader at this juncture.

### E.  Meritoriousness of Defendant's Third-Party Claims

In analyzing the merits of third-party claims, courts in this jurisdiction have applied the same futility standard applied to motions to amend brought pursuant to Rule 15(a)(2). *See Apollo Underwriting Ltd. v. Pats & Sons Gen. Cont. LLC*, Civ. No. 21-13723, 2022 WL 3273885, at *2 (D.N.J. Aug. 11, 2022) ("Leave to file a third-party complaint may also be denied on the basis of futility."); *Panchisin*, 2012 WL 5880346, at *2 ("A motion for leave to file a third-party complaint is treated in the same manner as a motion for leave to amend the original pleadings.").

"Futility means that the complaint . . . would fail to state a claim upon which relief could be granted." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997) (citation and internal quotation marks omitted). "In assessing 'futility,' the district court applies the same standard of legal sufficiency as applies under Rule 12(b)(6)." *Id.*

To determine if a complaint would survive a motion to dismiss under Rule 12(b)(6), the Court must accept as true all the facts alleged in the pleading, draw all reasonable inferences in favor of the plaintiff, and determine if "under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008). "[D]ismissal is appropriate only if, accepting all of the facts alleged in the [pleading] as true, the

7

p[arty] has failed to plead 'enough facts to state a claim to relief that is plausible on its face.'" *Duran v. Equifirst Corp.*, Civ. No. 09-3856, 2010 WL 918444, at *2 (D.N.J. March 12, 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Put simply, the alleged facts must be sufficient to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  While the Court must view the factual allegations contained in the pleading at issue as true, the Court is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations." *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007).

The parties discuss at length the congressional intent and purpose, or lack thereof, of the TVPRA and its relevant provisions. They also discuss whether Defendant's claims of contribution and indemnification are federally preempted.

According to Defendant, discovery and investigation in this matter have identified Plaintiff's traffickers as Gardener and Mickens, who were arrested and criminally charged for the sex trafficking of Plaintiff. (Def.'s Br. at 1-2, 6-8.)  Gardener is currently serving a fifty-year prison sentence for her crimes related to the trafficking of Plaintiff; Mickens pled guilty to conspiracy and was sentenced to five years in prison. (*Id.* at 1-2, 6.)  Courtyard, Element, Ramada, and Howard Johnson have also been identified as additional hotels where Plaintiff was allegedly trafficked. (*Id.* at 2; Docket Entry No. 26 at 2.)  Defendant's proposed Third-Party Complaint specifically details the proposed Third-Party Defendants' alleged roles in the sex trafficking of Plaintiff. (Docket Entry No. 26-1 ("TPC") ¶¶ 18-37.)  Although Plaintiff has not named the foregoing non-parties as defendants in this action, Defendant argues that under the TVPRA: (1) Gardener and Mickens qualify as "perpetrators"; and (2) Courtyard, Element, Ramada, and Howard Johnson may qualify as "perpetrators" and/or "beneficiaries."  (Def.'s Br. at 2; Docket Entry No. 26 at 2-

3.)  If and to the extent that Defendant is found liable in this action, Defendant proffers that the Third-Party Defendants are or may be "joint tortfeasors" under the New Jersey Joint Tortfeasor Contribution Law, N.J.S.A. 2A:53A-1 *et seq.* ("NJTCL"), who should be allocated their respective percentage of fault and from whom Defendant would be entitled contribution. (Def.'s Br. at 2; Docket Entry No. 26 at 2.)  Moreover, Defendant contends that Plaintiff, in choosing only to sue Defendant, is essentially "attempting to hold [Defendant] secondarily and/or vicariously liable for the putative Third-Party Defendants' conduct or 'venture,' potentially entitling [Defendant] to common law indemnification." (Def.'s Br. at 2-3; Docket Entry No. 26 at 2-3.)  Defendant argues that to permit its Third-Party Complaint would further the intent and purpose of the TVPRA, advancing the TVPRA's aim to "(1) 'mak[e] trafficking victims whole' and (2) hold perpetrators and 'all those who knowingly financially benefit from human trafficking' liable." (Def.'s Br. at 15 (citation omitted).)  Defendant further argues that its proposed third-party claims are not federally preempted. (Def.'s Br. at 11-12; Docket Entry No. 25 ("Def.'s Reply Br.") at 3-7.)

In rejoinder, Plaintiff contends that Defendant's motion should be denied "as the relief sought is not consistent with the intent and purpose of the TVPRA."  (Opp'n Br. at 1.)  According to Plaintiff, the TVPRA "does not allow for civil beneficiary defendants to apportion fault to traffickers or other entities." (*Id.*)  Plaintiff further argues that the NJTCL does not apply to federal question cases based solely on federal substantive law. (*Id.* at 1, 5.)  It is Plaintiff's position that "[a]llowing civil beneficiary defendants to apportion fault to traffickers, individuals who sexually assault victims, and other beneficiaries, would drastically undermine the effect of the civil beneficiary provision." (*Id.* at 1, 4.)

As the pending motion pertains to the proposed Third-Party Hotel Defendants, Plaintiff asserts that said hotels did not participate "with any person or entity related to the sex trafficking

9

of [Plaintiff] that occurred on the premises owned and operated by [Defendant] and doing business as The Red Roof Inn located at 3203 US Highway 1 Lawrenceville, NJ 08648-2409." (*Id.* at 8.) Plaintiff maintains that these entities "unequivocally did not participate in any venture or enterprise pertaining to the property located at the aforesaid address." (*Id.*)  Defendant retorts that Plaintiff's argument is (1) premature as discovery has yet to occur in earnest and, in any event, (2) unsupported by her own underlying allegations, which set forth that "the mere renting or operation of the rooms where the sex trafficking allegedly occurred is enough to give rise to a knowing financial benefit" and participation in the sex trafficking venture. (Def.'s Reply Br. at 8-9.) According to Defendant, the "'red flags' that Plaintiff alleges gave rise to [Defendant's] actual or constructive knowledge of existence of her sex trafficking . . . would equally apply to hotels where Plaintiff was trafficked just weeks earlier." (*Id.* at 9.)

Ultimately, both parties agree that the TVPRA does not expressly or implicitly create a statutory right to indemnification or contribution. (Def.'s Br. at 12; Opp'n Br. at 6-7.)  In fact, the TVPRA provides no language directly addressing how to apportion liability. *See A.B. v. Marriott Int'l, Inc.*, Civ. No. 19-5770, 2020 WL 3642485, at *3 (E.D. Pa. July 6, 2020) ("We see no language in the Act directly addressing how to apportion liability.").  In recognizing this fact, courts in this circuit have found that to permit impleader is not offensive to the purposes and objectives of the TVPRA where, as here, a defendant seeks to bring third-party claims for contribution and common law indemnification grounded in state law against third-party defendants who may qualify as "perpetrators" or "beneficiaries" under the Act.[3] *See A.B.*, 2020 WL 3642485,

---

[3] Based on its briefing, Defendant appears to solely bring its third-party claims for contribution and indemnification under state law. (Def.'s Br. at 3 ("Federal courts have routinely permitted third party claims for contribution and/or indemnification *where grounded in state law*[.] (emphasis added)), and at 12-14 (analyzing preemption, or lack thereof, of state law claims for contribution and indemnification in actions brought pursuant to the TVPRA); *see also* Def.'s Reply

at *5 (analyzing Pennsylvania law and finding, "With our focus on Rule 14(a)(1), and because the damages overlap and many persons and entities may be culpable in plaintiff's trafficking, we cannot preclude defendant's ability to attempt a recovery against the traffickers, or other businesses who also 'knew or should have known' of the trafficking, when the Act contemplates each may be liable."); *M.G. v. Hari OM LLC*, Civ. No. 24-10441, Docket Entry No. 36 (D.N.J. Mar. 12, 2026) (finding that defendant sufficiently demonstrated that its proposed claims for contribution and common law indemnification were consistent with the aims of the TVPRA).[4]  As Defendant highlights, other sister courts agree with this premise. *See, e.g.*, *Doe v. JPMorgan Chase Bank N.A.*, 687 F. Supp. 3d 405, 414 (S.D.N.Y. 2023) (finding that "the Court cannot simply presume that Congress intended to preempt all state-law claims for contribution or indemnification that are based upon federal-law violations," and holding that "the [TVPRA] does not preempt the state-law contribution or indemnification claims made here."); *A.W. v. Best W. Int'l, Inc.*, Civ. No. 21-4934, 2024 WL 1340264, at *3 (S.D. Ohio Mar. 29, 2024) (permitting third-party claims for state-law contractual indemnification).

While Plaintiff's arguments may ultimately prevail, such arguments and their corresponding questions are better suited to be addressed through dispositive motion practice.

### i.  Contribution

"Under the New Jersey Joint Tortfeasor Contribution Law, the right of contribution exists among joint tortfeasors." N.J. Stat. Ann. § 2A:53A-1–2; *Walsh Sec., Inc. v. Cristo Prop. Mgmt.*, Civ. No. 97-3496, 2009 WL 5064757, at *4 (D.N.J. Dec. 16, 2009).  "Joint Tortfeasor" is defined

---

Br. at 3-7 (same).) The Court therefore interprets that Defendant's third-party claims, as asserted, are raised under state law and, accordingly, limits its analysis to the same.

[4] Defendant has submitted the recent in-district decision of *M.G.* as supplemental authority in support of its motion. (Docket Entry No. 27.)  The Court accepts Defendant's submission and, while not bound by the decision, has taken the same under consideration.

as "two or more persons jointly or severally liable in tort for the same injury to person or property, whether or not judgment has been recovered against all or some of them." N.J. Stat. Ann. § 2A:53A-1–2; *Ernest Bock & Sons, Inc.*, 2023 WL 4268250, at *3 (citations omitted). "The law provides a 'cause of action for contribution . . . when two or more persons become liable in tort to the same person for the same harm.'" *Symbiont Sci. Eng'g & Constr., Inc. v. Ground Improvement Servs., Inc.*, 723 F. Supp. 3d 363, 384 (D.N.J. 2024) (quoting *Lukacs v. Purvi Padia Design LLC*, Civ. No. 21-19599, 2023 WL 6439877, at *3-4 (D.N.J. Oct. 2, 2023)).

In its proposed Third-Party Complaint, Defendant recites the traffickers' alleged activity and the alleged involvement of the other hotels. (TPC ¶¶ 18-37.) Specifically, Defendant details how Plaintiff's traffickers, Gardener and Mickens, took her to various hotels, where Mickens would act as "the muscle man" and Gardener would force Plaintiff to engage in prostitution. (*Id.* ¶¶ 20-28.) In particular, in regard to Howard Johnson, Defendant claims that a customer witnessed "[p]eople standing on their patios smoking out of crack and meth pipes." (*Id.* ¶ 33.) Defendant pleads that:

> [W]hile the customer was speaking to a clerk at the lobby, a woman "stumbled[] in, barely able to hold herself up and clearly drugged out of her mind with makeup running down her face and ratted out clothes barely clinging onto her body. She told him she had 'an appointment' in room 2-whatever, he handed her a keycard, and she dragged herself outside, flagged down a car that was pulled off near the entrance, and walked towards the rooms at the back of the building as the car followed her. To me, that screamed human trafficking/prostitution."

(*Id.*)

According to Defendant, the proposed Third-Party Hotel Defendants "knew or should have known that Plaintiff was being sex trafficked in violation of the TVPRA based on, *inter alia*, Plaintiff's appearance and age, activities in and around the hotel room(s) rented by the traffickers or on the traffickers' behalf, and/or other common indications of sex trafficking." (*Id.* ¶ 32.)

12

Defendant alleges that the proposed Third-Party Hotel Defendants "received a financial benefit from the sex trafficking in the form of rented hotels rooms and/or other money spent by the traffickers or on the traffickers' behalf in connection with the room rentals." (*Id.* ¶ 31.)  As noted, this is the same theory of liability asserted by Plaintiff against Defendant in her Complaint. (Compl. ¶¶ 33-52.)

Accepting all allegations as true at this stage, Plaintiff's injuries if proven would stem from a sex trafficking venture that was carried out by her traffickers and enabled by the hotels named in both her Complaint and Defendant's Third-Party Complaint. That is, as pled, "each share . . . involvement or neglect in carrying out or enabling the venture causing harm" to Plaintiff.  *A.B.*, 2020 WL 3642485, at *4.  As Defendant argues, the case of *A.B. v. Marriott Int'l, Inc.*, Civ. No. 19-5770, 2020 WL 3642485 (E.D. Pa. July 6, 2020) is particularly instructive. In *A.B.*, the defendant moved to file third-party claims of contribution and indemnification against (1) its hotel franchisees, who it claimed knew or should have known about plaintiff's trafficking while financially benefitting from the same, and (2) the persons who personally trafficked plaintiff "in and out of their franchisee hotels." *Id.* at *1. Though the *A.B.* court looked to Pennsylvania's law pertaining to joint tortfeasors, it found that if the defendant were found liable to plaintiff, then the defendant "may" have the right of contribution from other participants who also may have had a role in plaintiff A.B.'s injuries. *Id.* at *4.  This finding is germane to the present analysis. While Plaintiff did not elect to sue these other individuals and entities, if Defendant is found liable, it appears that Defendant may have the right of contribution from others—potential joint tortfeasors—that may have had a role in the trafficking of Plaintiff and her injuries.  To the extent that Plaintiff argues that Defendant has failed to establish that the hotel entities "participated in a venture with any person or entity related to the sex trafficking of [Plaintiff]," the Court agrees with

13

Defendant that such an argument is fact intensive and more appropriate on summary judgment than on a motion for impleader.

Defendant's motion is **GRANTED**, to the extent it seeks to assert a third-party claim for contribution against the proposed Third-Party Defendants.

### ii.   Common Law Indemnification

"New Jersey recognizes a common law right to indemnity." *Lukacs*, 2023 WL 6439877, at *3.  "This is an 'equitable remedy that shifts the entire responsibility for damages from a party who, without any fault, has been required to pay because of a legal relationship to the party at fault.'" *Symbiont Sci. Eng'g & Constr.*, 723 F. Supp. at 385 (quoting *Lukacs*, 2023 WL 6439877, at *3). "In New Jersey, a claim for indemnification arises in two circumstances: when a contract explicitly provides for indemnification or when a special legal relationship between the parties creates an implied right to indemnification." *Id.* (citations and internal quotation marks omitted). "These 'special legal relationships' include 'principal-agent, employer-employee, lessor-lessee, and bailor-bailee.'"  *Id.* (quoting *SGS U.S. Testing Co., Inc. v. Takata Corp.*, Civ. No. 09-6007, 2012 WL 3018262, at *5 (D.N.J. July 24, 2012) *aff'd*, 547 F. App'x 147 (3d Cir. 2013)); *see also Katz v. Holzberg*, Civ. No. 13-1726, 2013 WL 5946502, at *3 (D.N.J. Nov. 4, 2013) ("Examples of the special relationship that will support a third party's claim for indemnification include that of principal and agent, bailor and bailee, and lessor and lessee." (citation omitted)). "[I]mplied indemnification by way of a special relationship is a 'narrow doctrine' that is not frequently stretched beyond the examples of principal-agent, employer-employee, lessor-lessee, and bailor-bailee." *SGS U.S. Testing Co., Inc.*, 2012 WL 3018262, at *5 (citation omitted); *cf. Symbiont Sci. Eng'g & Constr.*, 723 F. Supp. at 385 n.17 (discussing very narrow exception related to "allegations premised on absolute or strict liability").  "A 'longstanding business relationship' is

14

not enough to show that a special legal relationship exists for indemnification purposes." *Calabria Ristorante, Inc. v. Ruggiero Seafood, Inc.*, Civ. No. 21-3712, 2025 WL 2778535, at \*3 (D.N.J. Sept. 30, 2025) (citing *Katz*, 2013 WL 5946502, at \*3 n.4).

In its proposed pleading, Defendant offers no basis for asserting an indemnification claim. Defendant does not allege that the proposed Third-Party Defendants had a contractual obligation to indemnify it.  Nor does Defendant allege any cognizable special relationship between itself and the proposed Third-Party Defendants.  Defendant has made no effort to explain how its alleged relationship with the any of the Third-Party Defendants amounts to a special relationship as defined under the doctrine of implied indemnification.[5]  As it pertains to the merits of Defendant's proposed third-party claim for common law indemnification, both parties provide a dearth of briefing on the issue.  Without more, the Court will not presume that a contractual right or special relationship exists. Therefore, to the extent Defendant seeks to assert a third-party claim of common law indemnification against the proposed Third-Party Defendants, Defendant's motion is **DENIED WITHOUT PREJUDICE**.

---

[5] The Court notes that the cases cited by Defendant in support of its motion are inapposite, to the extent that they pertain to its proposed third-party claim of common law indemnification. Notably, most, if not all, of the cases cited by Defendant are out of jurisdiction and/or out of circuit, many of which apply a different standard for common law indemnity based on the particular state in question or explicitly implicate contractual indemnification. *See A.B.*, 2020 WL 3642485 at \*4 n.24 (E.D. Pa. July 6, 2020) (applying Pennsylvania law); *JPMorgan Chase Bank, N.A.*, 687 F. Supp. 3d at 418 (applying New York law); *L.H. v. Red Roof Inn, Inc.*, Civ. No. 22-625, 2025 WL 714385, at \*10-13 (W.D. Ky. Mar. 5, 2025) (applying Kentucky law and analyzing state law contract-based indemnification); *A.W.*, 2024 WL 1340264, at \*3 (analyzing state law contract-based indemnification).

**IV.    CONCLUSION**

For the reasons stated above, Defendant's Motion for Leave to File a Third-Party Complaint (Docket Entry No. 22) is **GRANTED, in part, and DENIED, in part**.  An appropriate Order follows.


Dated:  March 31, 2026


   s/ Tonianne J. Bongiovanni
**HONORABLE TONIANNE J. BONGIOVANNI**
**UNITED STATES MAGISTRATE JUDGE**