**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| B.H., | Civil Action No.: 3:24-cv-08851-GC-TJB |
| Plaintiff, | Hon. Tonianne J. Bongiovanni, U.S.M.J. |
| v. | |
| JSK PRINCETON LLC, | |
| Defendant. | |
| JSK PRINCETON LLC, | |
| Third-Party Plaintiff, | |
| v. | |
| HIGH HOTELS, LTD. D/B/A COURTYARD BY MARRIOTT EWING PRINCETON; SSN EWING LLC D/B/A ELEMENT BY WESTIN EWING/PRINCETON; NEWCASTLE LODGING CORP D/B/A THE HOWARD JOHNSON BY WYNDHAM PRINCETON/LAWRENCEVILLE; TADCO LLC D/B/A RAMADA INN BY WYNDHAM BORDENTOWN D/B/A TOWN INN; NOIREAYA ESSENCE A/K/A ASHLEY GARDENER; BREON MICKENS, AND ABC CORPS. #1-5. | |
| Third-Party Defendants. | |

**JSK PRINCETON LLC's THIRD-PARTY COMPLAINT**

Pursuant to Federal Rule of Civil Procedure 14(a), Defendant JSK Princeton LLC ("JSK"),

by and through its undersigned counsel, files this Third-Party Complaint against Third-Party

Defendants High Hotels, LTD. d/b/a Courtyard By Marriot Ewing Princeton; SSN Ewing LLC

d/b/a Element by Westin Ewing/Princeton; Newcastle Lodging Corp d/b/a The Howard Johnson

by Wyndham Princeton/Lawrenceville; TADCO LLC d/b/a Ramada by Wyndham Bordentown

1

d/b/a Town Inn; Norieaye Essence a/k/a Ashley Gardener; Breon Mickens; and ABC CORPS. #1-5 (collectively, "Third-Party Defendants") for contribution with regard to B.H.'s ("Plaintiff") claims.  In support, JSK alleges as follows:

1.     JSK files this Third-Party Complaint in connection with an action filed against it by Plaintiff captioned <u>B.H. v. JSK Princeton LLC</u>,  No. 3:24-cv-08851-GC-TJB.  On August 30, 2024, Plaintiff commenced this action against JSK by filing a complaint.  <u>See</u> Plaintiff's Complaint, attached hereto as Exhibit ("Exh.") A.  JSK incorporates Plaintiff's Complaint by reference herein.

2.     On December 6, 2024, JSK filed its Answer denying the claims asserted against it by Plaintiff.  <u>See</u> JSK's Answer, attached hereto as Exh. B.  JSK incorporates its Answer by reference herein.

3.     JSK denies Plaintiff's allegations, denies all liability, and disputes Plaintiff's right to recover any damages from JSK; however, *if* JSK is adjudicated responsible for any damages to Plaintiff, it is entitled to recover the entire amount of any damages from the Third-Party Defendants pursuant to the principle of contribution.

## **PARTIES**

4.     Third-Party Defendant High Hotels, LTD. d/b/a Courtyard by Marriott Ewing Princeton ("Courtyard") is a Pennsylvania corporation with a principal place of business located at 1853 William Penn Way, Lancaster, PA 17601.

5.     Upon information and belief, Courtyard owned, operated, and/or managed the Courtyard by Marriot hotel located at 360 Scotch Rd, Ewing Township, NJ 08628 at the time that Plaintiff was allegedly sex trafficked.

6.     Third-Party Defendant SSN Ewing LLC d/b/a Element by Westin Ewing/Princeton ("Element") is a New Jersey corporation with a principal place of business at 1000 Sam Weinworth Rd East, Ewing, NJ 08628.

7.     Upon information and belief, Element owned, operated, and/or managed the Element hotel located at 1000 Sam Weinroth Rd, Ewing Township, NJ 08628 at the time that Plaintiff was allegedly sex trafficked.

8.     Third-Party Defendant Newcastle Lodging Corp d/b/a The Howard Johnson by Wyndham Princeton/Lawrenceville ("Howard Johnson") is a Delaware corporation with a place of business at 2995 Brunswick Pike, Lawrenceville, NJ 08648.

9.     Upon information and belief, Howard Johnson owned, operated, and/or managed the Howard Johnson hotel located at 2995 Brunswick Pike, Lawrenceville, NJ 08648 at the time that Plaintiff was allegedly sex trafficked.

10.    Third-Party Defendant TADCO LLC d/b/a Ramada by Wyndham Bordentown d/b/a Town Inn ("Ramada") was a New Jersey corporation with a place of business at 1083 Route 206 N, Bordentown, NJ 08505 at or around the time that Plaintiff was allegedly sex trafficked.

11.    Upon information and belief, Ramada owned, operated, and/or managed the Ramada located at 1083 Route 206 N, Bordentown, NJ 08505 at the time that Plaintiff was allegedly sex trafficked.

12.    Noireaye Essence a/k/a Ashley Gardener ("Gardener") is currently incarcerated at the Edna Mahan Correctional Facility located at 30 County Rd 513, Clinton, NJ.

13.    Breon Mickens ("Mickens") is an individual who currently resides at 209 Coolidge Ave, Apt. 1A, Trenton, NJ 08618.

3

14.     Third-Party Defendants ABC Corps. #1-5 are other hotels, establishments, and/or properties at which Plaintiff was trafficked and/or owners of the same, and/or other entities which may be jointly liable for any damages owed to Plaintiff.  Because discovery is ongoing and Plaintiff has not provided certain pertinent information, JSK is unable to plead their true names and/or facts about them.  JSK has nonetheless named them as "ABC Corps. #1-5" to preserve its rights and ensure compliance with the Court's August 15, 2025 deadline for filing a motion for leave to file a Third-Party Complaint.

15.     The Third-Party Defendants may be liable to JSK for all or part of the claim that Plaintiff  is pursuing against JSK in this action under the Federal William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008, 18 U.S.C. § 1595 ("TVPRA").  See Fed. R. Civ. P. 14(a)(1).

## JURISDICTION & VENUE

16.     This Court has subject-matter jurisdiction over JSK's Third-Party Complaint under 28 U.S.C. § 1367(a).  JSK's Third-Party Complaint and the claims asserted therein are related to Plaintiff federal claim against JSK under the TVPRA such that they form part of the same case or controversy within the meaning of Article III of the U.S.  Constitution.

17.     Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events giving rise to this action occurred in the District of New Jersey, specifically in or around Mercer County.

## FACTUAL ALLEGATIONS

18.     The allegations in Plaintiff's Complaint are incorporated by reference, as if set forth at length herein, solely for purposes of setting out the background of the underlying action that

gives rise to this Third-Party Complaint, and without admitting the truth of the matters asserted therein.

19.    JSK's Answer to Plaintiff's Complaint is also incorporated by reference, as if set forth at length herein.

20.    In her Complaint, Plaintiff claims that in 2017 and into 2018, Plaintiff was a minor and the victim of sex trafficking conducted by her traffickers, who have since been identified in discovery as Gardener and Mickens.  See Exh. A, at ¶ 28-30.

21.    Upon information and belief, both Gardener and Mickens were arrested and charged under Indictment No.18-04-0058 for the trafficking of Plaintiff.

22.    Plaintiff alleges that Mickens pled guilty to second degree conspiracy and was sentenced to five years in prison.  Id., at ¶ 28-29.

23.    The charges against Gardener proceeded to trial in the matter captioned State v. Gardener,  Indictment No.18-04-0058, in Mercer County.

24.    During Gardener's criminal trial, Plaintiff testified that from December 2017 to early January 2018, Gardener took her to various hotels, including the Courtyard and Element, where Gardener was prostituting Plaintiff.

25.    During an interview with police, Plaintiff stated that Gardener also "had" her at the Ramada and Howard Johnson.

26.    Plaintiff also testified that during Gardener's criminal trial that Mickens would act as the "muscle man" and would drive her and Gardener to the different hotels, including Courtyard.

27.    During Gardener's criminal trial, Plaintiff also testified that on or about December 28, 2017, Mickens drove her and Gardener to Courtyard; while there, Gardener forced her to have

5

sex.  Plaintiff further testified that on that date, she took the money she believes was hers and left the Courtyard.

28.    Plaintiff alleges that Gardener was subsequently sentenced to fifty years in prison for forcing Plaintiff to "engage in prostitution at hotels in Mercer County, NJ."  Id. at ¶ 28.

29.    Plaintiff has further averred in her written discovery that she was the victim of sex trafficking at other hotels in the Mercer County area in December 2017 through January 2018, and that Gardener, Mickens, or other individuals at their direction, booked the hotel rooms used for the sex trafficking of Plaintiff, in violation of the TVPRA.

30.    Plaintiff alleges that "the hotel industry plays" a "critical role in enabling the sex trade industry" and that there is a "widespread national epidemic of hotel/motel sex trafficking."  Id. at ¶ 12.

31.    Accordingly, the Courtyard, Element, Howard Johnson, and Ramada, as well as any other hotels and/or motels where Plaintiff was allegedly sex trafficked, allegedly received a financial benefit from the sex trafficking in the form of rented hotels rooms and/or other money spent by the traffickers or on the traffickers' behalf in connection with the room rentals.

32.    The Courtyard, Element, Howard Johnson, and Ramada, as well as any other hotels and/or motels where Plaintiff was allegedly sex trafficked excepting JSK, knew or should have known that Plaintiff was being sex trafficked in violation of the TVPRA based on, *inter alia*, Plaintiff's appearance and age, activities in and around the hotel room(s) rented by the traffickers or on the traffickers' behalf, and/or other common indications of sex trafficking.

33.    Further, a review on Yelp from July 10, 2018 states that a customer of Howard Johnson witnessed "People standing on their patios smoking out of crack and meth pipes."  Further, while the customer was speaking to a clerk at the lobby, a woman "stumbled[] in, barely able to

6

hold herself up and clearly drugged out of her mind with makeup running down her face and ratted out clothes barely clinging onto her body. She told him she had 'an appointment' in room 2-whatever, he handed her a keycard, and she dragged herself outside, flagged down a car that was pulled off near the entrance, and walked towards the rooms at the back of the building as the car followed her. To me, that screamed human trafficking/prostitution." Accordingly, Howard Johnson knew or should have known that prostitution and/or trafficking may have been occurring on its property.

34. The Courtyard, Element, Howard Johnson, and Ramada,, as well as any other hotels and/or motels where Plaintiff was allegedly sex trafficked excepting JSK, participated in any sex trafficking venture of Plaintiff.

35. Plaintiff alleges that as a consequence of being sex trafficked, she has suffered economic, physical, mental, emotional, psychiatric, and psychological injuries. Id. at ¶ 56.

36. Based on the foregoing, Plaintiff seeks to hold JSK liable for the trafficking she experienced at other hotels over which JSK had no control, and/or as a result of other individuals' actions over whom JSK had no control.

37. The Third-Party Defendants, not JSK, allegedly engaged in the above-summarized conduct giving rise to Plaintiff's TVPRA claim and alleged related damages. JSK denies all liability.

**COUNT I: CONTRIBUTION**

38. JSK incorporates by reference all preceding paragraphs as though the same were fully set forth herein at length.

39.    New Jersey law recognizes a right of contribution among joint tortfeasors. See N.J. Stat. § 2A:53A-2.

40.    Third-Party Defendants are joint tortfeasors in the original action Plaintiff filed against JSK.

41.    Should Plaintiff prevail on her claim against JSK—and any liability on the part of JSK is specifically denied—any resulting damages were caused or substantially contributed to by the actions of the Third-Party Defendants, as more specifically set forth in the Complaint and Third-Party Complaint.

42.    The Third-Party Defendants are solely liable to Plaintiff, jointly and severally liable, and/or liable to JSK for all sums awarded to any party and against JSK, if any, at the trial of this matter.

43.    Should Plaintiff prevail on her claim against JSK—and any liability on the part of JSK is specifically denied—the Third-Party Defendants are liable to the JSK by way of contribution for all damages awarded to Plaintiff, jointly and severally, together with costs, attorney's fees, and such other relief as the Court deems just and appropriate.

## PRAYER FOR RELIEF

**WHEREFORE**, based on the foregoing, JSK seeks judgment in its favor and against all Third-Party Defendants, including contribution for any and all damages awarded to Plaintiff, jointly and severally, together with costs, attorney's fees, and such other relief as the Court deems just and appropriate.

## DEMAND FOR JURY TRIAL

JSK demands a trial by jury on all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Date: April 7, 2026

By: */s/ Peter M. Perkowski, Jr.*
PETER M. PERKOWSKI JR.
RIKER DANZIG LLP
Seven Giralda Farms, Suite 250
Madison, NJ 07940-1051
Attorneys for Defendant,
JSK Princeton LLC

4918-9830-4157, v. 1

9

# Exhibit A

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| B.H., AN INDIVIDUAL, | CIVIL ACTION NO: |
| Plaintiff, | |
| JSK PRINCETON LLC, | **COMPLAINT** |
| Defendant | |

COMES NOW the Plaintiff B.H, by and through the undersigned counsel, and respectfully submits her complaint for damages and makes the following averments.

**INTRODUCTION**

1.　　This action for damages is brought by B.H. ("Plaintiff"), a survivor of sex trafficking, under the Federal William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA"), 18 U.S.C. § 1595.

2.　　JSK PRINCETON LLC ("Defendant") was a hotel owner, hotel operator, franchisee, manager, and/or supervisor of the subject premises and subject hotel, d/b/a Red Roof Inn, located at 3203 US Highway 1 Lawrenceville, NJ 08648-2409, during the relevant time period, and prior thereto, and as such responsible for the subject hotel during the time period Plaintiff was sex trafficked on said premises.

3.　　During the relevant time period, Defendant was owner of the subject premises located at 3203 US Highway 1 Lawrenceville, NJ 08648-2409.

4.　　Sex trafficking is defined under 22 U.S.C. § 7102 (11) as "The recruitment, harboring, transportation, provision, obtaining, patronizing, or soliciting of a person for the purposes of a commercial sex act, in which the commercial sex act is induced by force, fraud, or

coercion, or in which the person induced to perform such an act has not attained 18 years of age.”

5. Plaintiff meets the definition of a sex trafficking victim as she was induced by force, fraud, and coercion by her trafficker(s) to engage in commercial sex at the subject hotel in 2017 through and inclusive of January 2018. She was psychologically and physically prohibited from escape from her trafficker.

6. Plaintiff further meets the definition of a sex trafficking victim as Plaintiff was a minor (born in 2000) induced to perform sex acts by her trafficker(s) at the subject hotel before she had attained 18 years of age.

7. The Trafficking Victims Protections Reauthorization Act (“TVPRA”) provides a civil remedy for victims of a violation of the act. Section 1595 of the TVPRA provides that “[a]n individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorney’s fees.” 18 U.S.C. § 1595.

8. As it pertains to the subject Defendant, Plaintiff was sex trafficked at the aforesaid hotel by her trafficker in 2017 through and inclusive of January 2018.

9. Sex trafficking occurred at this subject hotel in 2017 and, upon information and belief, prior thereto.

10. As a hotel owner and hotel operator, Defendant controlled the training, policies, and decisions on implementation and execution of anti-trafficking policies, protocol, rules and guidelines for its subject property where Plaintiff was sex trafficked.

11. The passage of the TVPA in 2000 and the passage of the TVPRA in 2008 as well

as numerous other legislative initiatives, put the Defendant on notice of the high likelihood of these illegal acts occurring on the subject hotel premises which, at a minimum, warranted them to be all the more vigilant and proactive in preventing this conduct.

12.     Years before Plaintiff was trafficked, Defendant knew or should have known of the critical role that the hotel industry plays in enabling the sex trade industry and of the widespread national epidemic of hotel/motel sex trafficking. By 2012, training guides and videos were available through the American Hotel Lodging Association (AHLA) and ECPAT-USA and via other resources.

13.     Before and during the relevant time period Defendant failed to implement sufficient educational and training programs on sex trafficking within its business chain of command, as well as failed to implement policies for preventing, identifying, reporting, documenting, investigating, and stopping sex trafficking at the subject hotel.

14.     During the time period of trafficking of the Plaintiff at the subject hotel which occurred in 2017 through and inclusive of January 2018, Defendant failed to act upon the obvious and overt signs alerting them to the sex trafficking taking place at this subject hotel including as to Plaintiff herein and in violation of the TVPRA.

15.     Had the Defendant timely and properly implemented policies and procedures common and reasonably accepted in the hospitality industry concerning anti-trafficking, safety and security it is more likely than not that the injuries suffered by the Plaintiff at the subject hotel would have been prevented or mitigated.

16.     Due to the failure of Defendant to timely and properly implement anti-trafficking policies and practices, Plaintiff was repeatedly victimized and trafficked for sex on Defendant's premises in violation of the TVPRA.

## PARTIES

17.     Due to the sensitive, private, and potentially retaliatory nature of the allegations herein, Plaintiff's name and address is not contained in this Complaint to protect the safety, privacy and identity of this subject sex trafficked victim. Nationwide similarly situated Plaintiffs have proceeded by pseudonym or by their initials due to the foregoing.

18.     Plaintiff is currently a resident of New Jersey.

19.     Plaintiff was born in 2000.

20.     At all times relevant and material, Defendant JSK PRINCETON LLC owned and operated a hotel d/b/a The Red Roof Inn located at 3203 US Highway 1 Lawrenceville, NJ 08648-2409 and was authorized to do, licensed to do, and was doing business in the State of Illinois offering the subject hotel as a place of public lodging.

21.     The principal place of business of Defendant JSK PRINCETON LLC is 3203 US Highway 1 Lawrenceville, NJ 08648-2409.

22.     Defendant's Registered Agent's address is 25 Glenn Oaks Court, Old Bridge NJ 08857.

## JURISDICTION AND VENUE

23.     This Honorable Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because this action arises under the Constitution, laws, or treaties of the United States, namely 18 U.S.C. § 1595.

24.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the Count asserted in this action occurred in the judicial district where this action was brought, and Defendant conducts business within this

District pursuant to 28 U.S.C. § 1391(b).

## CAUSE OF ACTION

### A. VIOLATION OF 18 U.S.C. § 1595 ("TVPRA")

25.     Plaintiff sets forth an action for violation of 18 U.S.C § 1595 as against the above-captioned Defendant.

26.     Plaintiff is a "victim" of sex trafficking as protected under applicable provisions of the TVPRA.

27.     Plaintiff further meets the definition of a sex trafficking victim as Plaintiff was a minor induced to perform sex acts by her traffickers at the subject hotel before she had attained 18 years of age.

28.     A trafficker of Plaintiff was sentenced to fifty (50) years in State Prison after being convicted at trial of first-degree human trafficking and other charges, for forcing a girl, 17 years old, to engage in prostitution at hotels in Mercer County, N.J.

29.     Another trafficker of Plaintiff pleaded guilty to second-degree conspiracy and was sentenced to five years in prison in November 2019.

30.     As it pertains to this Defendant, Plaintiff was sex trafficked at 3203 US Highway 1 Lawrenceville, NJ 08648-2409 at a hotel d/b/a Red Roof Inn in 2017 through and inclusive of January 2018.

31.     Section 1591 of the TVPRA criminalizes sex trafficking of adults by force, fraud or coercion. See 18 U.S.C. § 1591. Separately, §1595 of the TVPRA provides individuals who are victims of sex trafficking with a civil remedy against the traffickers or the beneficiaries of the sex trafficking crime. See 18 U.S.C. §1595(a). More specifically, §1595 provides for three

distinct causes of action: (1) a claim against the trafficker who directly violated §1591(a)(1) – a criminal statute; (2) a beneficiary claim against the trafficker who directly violated §1591(a)(2) – a criminal statute; and (3) a beneficiary claim against a civil defendant who did not violate §1591, but who "knowingly benefit[ed], financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter." 18 U.S.C. § 1595(a); the subject lawsuit is applicable to prong three, i.e. a beneficiary claim against a civil defendant.

32.     In order to induce Plaintiff by force, fraud and coercion to engage in sex with sex buyers at the subject hotel, her traffickers used various means to do so including (a) traffickers utilizing physical and verbal abuse on and as to Plaintiff and at times in plain sight and earshot of defendant's staff; (b) traffickers instilled in Plaintiff the fear of severe bodily injury and/or fear of death if trafficker's directives were not complied with; (c) psychological coercion; (d) withholding Plaintiff's identifying document(s); and (e) other means of force, fraud and coercion used by the trafficker of Plaintiff to induce her to have sex with sex buyers at the subject hotel.

33.     Defendant knowingly benefited from the sex trafficking of Plaintiff at the subject hotel by receiving payment for the room(s) rented by her traffickers (or at the direction of her traffickers) that were used for sex trafficking, including as to the Plaintiff, in violation of the TVPRA in 2017 through and inclusive of January 2018.

34.     Defendant rented room(s) to individuals it knew or should have known were engaged in the sex trafficking, and of Plaintiff in particular, in violation of the TVPRA.

35.     The rental of a hotel room constitutes a financial benefit from a relationship with the trafficker sufficient to meet "financially benefitted" element of the §1595(a) standard.

36.     Plaintiff's traffickers took proceeds derived from the sex trafficking occurring on

the subject premises to continue to pay for room(s) rented at the subject hotel during the time that Plaintiff was being sex trafficked there in violation of the TVPRA.

37. In addition, Defendant received other financial benefit including, but not limited to, from Wi-Fi which, in part, enabled the subject sex trafficking to occur (as Plaintiff was advertised by her traffickers online) and from such Wi-Fi service Defendant, upon information and belief, received financial benefit.

38. Defendant participated in a venture by operating the subject hotel that rented rooms to individuals that Defendant knew or should have known were involved in sex-trafficking, including as to the Plaintiff herein, in violation of the TVPRA.

39. During the time that Plaintiff was trafficked at the subject hotel in 2017 through and inclusive of January 2018, Plaintiff's trafficker(s) had direct interaction with hotel employee(s) and staff by means of paying, befriending, or compensating employee(s) and staff member(s) to act as lookout(s)/informant(s) for Plaintiff's trafficker so as to inform the trafficker of police activity or other similar type alerts.

40. In this case, during the relevant time period alleged herein, Defendant took part in a common undertaking or enterprise involving risk and potential profit with Plaintiff's trafficker(s) that violated the TVPRA.

41. Operating a hotel and renting out rooms is an enterprise involving risk and potential profit.

42. Defendant operating the subject hotel and renting out rooms to Plaintiff's trafficker(s) was an enterprise involving risk and potential profit.

43. Defendant operating the subject hotel and renting out rooms to Plaintiff's

traffickers was an enterprise involving risk and potential profit which violated the TVPRA as to the Plaintiff herein.

44. This Defendant had constructive and actual knowledge that the undertaking or enterprise violated the TVPRA as to the Plaintiff.

45. The modus operandi of the traffickers was to renew the room(s) rental daily.

46. A continuous business relationship existed between the subject hotel, its agents, employees and staff, and Plaintiff's trafficker(s), in part, in that the hotel repeatedly rented rooms, and/or repeatedly renewed room rentals, to individual(s) they knew or should have known were involved in sex trafficking on the premises, including as to the Plaintiff.

47. Plaintiff's traffickers had prior commercial dealings with the subject hotel which the trafficker and Defendant wished to reinstate for profit when Plaintiff's traffickers repeatedly rented rooms and/or repeatedly renewed room rentals that were used for trafficking of victims including Plaintiff.

48. Defendant knew or should have known about the nature of the sex trafficking occurring at the subject hotel, including as they related to Plaintiff, a victim, due to the many red flags then and there existing, including but not limited to: (a) constant foot traffic of sex buyers to the trafficker's rented room(s) to have sex with trafficked victim(s); (b) trafficked victim(s) would walk around hotel grounds drug and/or alcohol impaired, sleep deprived, hygiene impaired, behavior impaired, with visible bruising, malnourished, visibly under the age of 18 years, and in sexually explicit clothing; (c) suspicious individuals loitering outside the hotel room(s) when a sex buyer would enter a room(s); (d) inside the hotel room(s) rented by the trafficker(s) (or at the direction of the trafficker(s)) there was a suspicious bunch of people and suspicious items including cash, drugs, drug paraphernalia, condoms, lubricants which was

observed by housekeeping staff and in plain sight of housekeeping staff; (e) trafficker(s) monitoring hotel hallway, door of room(s) and walking hotel perimeter; (f) trafficker(s) shadowing Plaintiff (or having another shadow Plaintiff) in plain sight of hotel staff; (g) Plaintiff soliciting for sex buyers on the hotel premises at the direction of her trafficker, (h) Plaintiff's room exhibited signs of commercial sex work, (i) loud noise and yelling emanating from room where sex trafficking of plaintiff was occurring and (j) other commonly known sex trafficking red flags which the above captioned Defendant knew or should have known of had anti-trafficking measures been timely and properly implemented at the hotel.

49.     Defendant's staff witnessed and observed on a regular and frequent basis signs and indicators of sex trafficking including items set forth in paragraph 48 above.

50.     When being trafficked at the subject hotel in 2017 through and inclusive of January 2018 Plaintiff interacted with Defendant's staff on a daily basis, and Defendant's staff witnessed and observed Plaintiff, her trafficker(s) as well as a frequent procession of sex buyers going in and out of the subject rented rooms, contemporaneous with other signs and indicators of trafficking occurring on the subject premises.

51.     Plaintiff knows that individuals that witnessed and observed red flags indicative for suspicion for sex trafficking were staff members in that the staff were readily identifiable to Plaintiff either by her knowing of the individual and/or by means of the staff wardrobe/nametag/hotel logo and/or by means of a staff member being in an employee restricted area.

52.     Defendant's failure, by its agents, servants, staff, and employees, to timely and properly prevent the sex trafficking or timely intervene regarding same was a proximate and competent cause and substantial factor in causing Plaintiff's severe injuries in this case including,

but not limited to, being the child victim of sex trafficking when at this subject hotel and suffering personal injury and the trauma physically and mentally of being induced to engage in commercial sex with multiple sex buyers per day, while being trafficked, and while simultaneously being under fear of severe harm or death if she did not comply as well as all residual injuries suffered by PTSD.

53.     This Defendant, during the relevant time period, could deny accommodation and/or eject a guest for a number of reasons including, but not limited to, (1) guest visibly under the influence of drugs or alcohol, (2) guest creating a nuisance to the public; (3) guest believed to use a hotel room for unlawful purposes, (4) guest uses hotel amenities and premises for unlawful acts, (5) guest brings in extra unregistered guests, (6) guests behavior reasonably disturbs other guests (7) guest violates other rules set by the hotel and (8) for other indicated reasons.

54.     Plaintiff being sex trafficked at this subject hotel was a proximate cause, competent cause and substantial factor in causing her severe and permanent injuries including but not limited to personal injuries including the horror of being a child victim of sex trafficking as well as significant levels of psychological trauma due to the levels of abuse she was caused to endure during the time she was trafficked. This trauma led to depression, anxiety disorders, and PTSD, which in turn affects daily functioning.

55.     As a direct and proximate result of Defendant's multiple failures to act, mandate, establish, execute anti-trafficking measures and modify their anti-trafficking efforts at its hotel property, Plaintiff was sex trafficked, sexually exploited, and victimized repeatedly at Defendant's hotel in violation of the TVPRA.

56.     As a consequence of being sex trafficked at the subject hotel, Plaintiff suffered

and will continue to suffer substantial economic, physical, mental, emotional, psychiatric, psychological injuries as the result of being trafficked and sexually exploited at the subject hotel in violation of 18 U.S.C. §1591.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendant as identified in the above-referenced Count and as follows:

a)      All available compensatory damages for the described losses with respect to the above cause of action;

b)      Past and future emotional distress;

c)      Consequential and/or special damages;

d)      All available noneconomic damages, including without limitation pain, suffering, and loss of enjoyment of life;

e)      Disgorgement of profits obtained through unjust enrichment;

f)      Restitution;

g)      All damages allowable under the TVPRA;

h)      Reasonable and recoverable attorney's fees;

i)      Punitive damages with respect to each cause of action;

j)      Costs of this action; and

k)      Pre-judgement and all other interest recoverable

## DEMAND FOR JURY TRIAL

Plaintiff respectfully requests a trial by jury on all issues so triable.

Dated: August 29, 2024

Respectfully submitted,

/s/Rebecca Newman, Esq.
Douglas and London, P.C.
59 Maiden Lane, 6th Floor
New York, NY 10038
Telephone: (212) 566-7500
Facsimile: (212) 566-7501
rnewman@douglasandlondon.com

Randolph Janis, Esq.
(Motion to be made for Pro Hac Vice admission)
Douglas and London, P.C.
59 Maiden Lane, 6th Floor
New York, NY 10038
Telephone: (212) 566-7500
Facsimile: (212) 566-7501
rjanis@douglasandlondon.com

Chloe Makowsky, Esq.
(Motion to be made for Pro Hac Vice admission)
Douglas and London, P.C.
59 Maiden Lane, 6th Floor
New York, NY 10038
Telephone: (212) 566-7500
Facsimile: (212) 566-7501
cmakowsky@douglasandlondon.com

*Attorneys for Plaintiff*

# Exhibit B

RIKER DANZIG LLP
Peter M. Perkowski Jr., Esq. (5174)
Headquarters Plaza
One Speedwell Avenue
Morristown, New Jersey 07962
pperkowski@riker.com
Tel.: (973) 538-0800
Fax: (973) 538-1984

Attorneys for Defendant,
JSK Princeton, LLC

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| B.H., AN INDIVIDUAL,<br><br>Plaintiff,<br><br>v.<br><br>JSK PRINCETON, LLC,<br><br>Defendant. | CIVIL ACTION NO. 3:24-CV-08851-GC-TJB<br><br><br><br>**DEFENDANT JSK PRINCETON, LLC'S ANSWER AND AFFIRMATIVE DEFENSES** |

Defendant JSK Princeton, LLC ("JSK"), by way of Answer to the Complaint filed by

Plaintiff B.H., an individual ("Plaintiff"), states as follows:

### AS TO INTRODUCTION

1. The allegations contained in the first paragraph of the Complaint constitute legal argument

or other conclusions to which no response is required.

2. The allegations contained in the second paragraph of the Complaint constitute legal

argument or other conclusions to which no response is required. To the extent the allegations are

deemed to be factual, JSK admits only that it owned and operated a hotel located at 3203 US

Highway 1, Lawrenceville NJ 08648 d/b/a Red Roof Inn during the 2017-2018 time period. JSK

denies the remaining allegations contained in this paragraph.

3. JSK admits the allegations contained in the third paragraph of the Complaint.

4. The allegations contained in the fourth paragraph of the Complaint constitute legal argument or other conclusions to which no response is required.

5. The allegations contained in the fifth paragraph of the Complaint constitute legal argument or other conclusions to which no response is required.

6. The allegations contained in the sixth paragraph of the Complaint constitute legal argument or other conclusions to which no response is required.

7. The allegations contained in the seventh paragraph of the Complaint constitute legal argument or other conclusions to which no response is required.

8. The allegations contained in the eighth paragraph of the Complaint constitute legal argument or other conclusions to which no response is required. To the extent the allegations are deemed to be factual, JSK denies them.

9. The allegations contained in the ninth paragraph of the Complaint constitute legal argument or other conclusions to which no response is required. To the extent the allegations are deemed to be factual, JSK denies them.

10. The allegations contained in the tenth paragraph of the Complaint constitute legal argument or other conclusions to which no response is required.

11. The allegations contained in the eleventh paragraph of the Complaint constitute legal argument or other conclusions to which no response is required.

12. The allegations contained in the twelfth paragraph of the Complaint constitute legal argument or other conclusions to which no response is required. To the extent the allegations are deemed to be factual, JSK denies them.

13. JSK denies the allegations contained in the thirteenth paragraph of the Complaint.

2

14.     JSK denies the allegations contained in the fourteenth paragraph of the Complaint.

15.     The allegations contained in the fifteenth paragraph of the Complaint constitute legal argument or other conclusions to which no response is required.  To the extent the allegations are deemed to be factual, JSK denies them.

16.     The allegations contained in the sixteenth paragraph of the Complaint constitute legal argument or other conclusions to which no response is required.  To the extent the allegations are deemed to be factual, JSK denies them.

### AS TO PARTIES

17.     The allegations contained in the seventeenth paragraph of the Complaint constitute legal argument or other conclusions to which no response is required.

18.     JSK lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained in the eighteenth paragraph of the Complaint.

19.     JSK lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained in the nineteenth paragraph of the Complaint.

20.     JSK denies the allegations contained in the twentieth paragraph of the Complaint.

21.     JSK admits the allegations contained in the twenty-first paragraph of the Complaint.

22.     JSK admits the allegations contained in the twenty-second paragraph of the Complaint.

### AS TO JURISDICTION AND VENUE

23.     The allegations contained in the twenty-third paragraph of the Complaint constitute legal argument or other conclusions to which no response is required.

24.     The allegations contained in the twenty-fourth paragraph of the Complaint constitute legal argument or other conclusions to which no response is required.

## AS TO CAUSE OF ACTION

### A.      AS TO VIOLATION OF 18 U.S.C § 1595 ("TVPRA")

25.      The allegations contained in the twenty-fifth paragraph of the Complaint constitute legal argument or other conclusions to which no response is required.

26.      The allegations contained in the twenty-sixth paragraph of the Complaint constitute legal argument or other conclusions to which no response is required.

27.      The allegations contained in the twenty-seventh paragraph of the Complaint constitute legal argument or other conclusions to which no response is required.

28.      JSK lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained in the twenty-eighth paragraph of the Complaint.

29.      JSK lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained in the twenty-ninth of the Complaint.

30.      The allegations contained in the thirtieth paragraph of the Complaint constitute legal argument or other conclusions to which no response is required.  To the extent the allegations are deemed to be factual, JSK denies them.

31.      The allegations contained in the thirty-first paragraph of the Complaint constitute legal argument or other conclusions to which no response is required.

32.      JSK lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained in the thirty-second paragraph of the Complaint.

33.      The allegations contained in the thirty-third paragraph of the Complaint constitute legal argument or other conclusions to which no response is required.  To the extent the allegations are deemed to be factual, JSK denies them.

34.      JSK denies the allegations contained in the thirty-fourth paragraph of the Complaint.

35. The allegations contained in the thirty-fifth paragraph of the Complaint constitute legal argument or other conclusions to which no response is required.

36. JSK lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained in the thirty-sixth paragraph of the Complaint.

37. JSK denies the allegations contained in the thirty-seventh paragraph of the Complaint.

38. The allegations contained in the thirty-eighth paragraph of the Complaint constitute legal argument or other conclusions to which no response is required. To the extent the allegations are deemed to be factual, JSK denies them.

39. JSK denies the allegations contained in the thirty-ninth paragraph of the Complaint.

40. The allegations contained in the fortieth paragraph of the Complaint constitute legal argument or other conclusions to which no response is required. To the extent the allegations are deemed to be factual, JSK denies them.

41. The allegations contained in the forty-first paragraph of the Complaint constitute legal argument or other conclusions to which no response is required.

42. The allegations contained in the forty-second paragraph of the Complaint constitute legal argument or other conclusions to which no response is required. To the extent the allegations are deemed to be factual, JSK denies them.

43. The allegations contained in the forty-third paragraph of the Complaint constitute legal argument or other conclusions to which no response is required. To the extent the allegations are deemed to be factual, JSK denies them.

44. JSK denies the allegations contained in the forty-fourth paragraph of the Complaint.

45. JSK lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained in the forty-fifth paragraph of the Complaint.

46. The allegations contained in the forty-sixth paragraph of the Complaint constitute legal argument or other conclusions to which no response is required. To the extent the allegations are deemed to be factual, JSK denies them.

47. JSK denies the allegations contained in the forty-seventh paragraph of the Complaint.

48. JSK denies the allegations contained in the forty-eighth paragraph of the Complaint.

49. JSK denies the allegations contained in the forty-ninth paragraph of the Complaint.

50. JSK denies the allegations contained in the fiftieth paragraph of the Complaint.

51. JSK lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained in the fifty-first paragraph of the Complaint.

52. The allegations contained in the fifty-second paragraph of the Complaint constitute legal argument or other conclusions to which no response is required. To the extent the allegations are deemed to be factual, JSK denies them.

53. JSK admits the allegations contained in the fifty-third paragraph of the Complaint.

54. The allegations contained in the fifty-fourth paragraph of the Complaint constitute legal argument or other conclusions to which no response is required. To the extent the allegations are deemed to be factual, JSK denies them.

55. The allegations contained in the fifty-fifth paragraph of the Complaint constitute legal argument or other conclusions to which no response is required. To the extent the allegations are deemed to be factual, JSK denies them.

56. The allegations contained in the fifty-sixth paragraph of the Complaint constitute legal argument or other conclusions to which no response is required. To the extent the allegations are deemed to be factual, JSK denies them.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

The Complaint fails to state a claim, in whole or in part, for which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE

The conduct alleged by Plaintiff (which JSK expressly denies), and all damaged complained of and claimed by Plaintiff, if any, were the fault of and caused by the superseding and intervening acts of third persons over whom JSK had no control or responsibility, and for whose conduct JSK is not liable, destroying any causal connection between any act or omission of JSK (which JSK expressly denies) and the alleged injury to Plaintiff.

### THIRD AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred by any and all applicable Statute of Limitations.

### FOURTH AFFIRMATIVE DEFENSE

JSK did not violate any provision of the TVPRA and/or TVPA.

### FIFTH AFFIRMATIVE DEFENSE

Plaintiff is not entitled to some and/or all of the relief requested in (a) – (k) in the Complaint's Prayer for Relief.

### SIXTH AFFIRMATIVE DEFENSE

JSK breached no duty owed or owing to Plaintiff at any relevant time, and/or at all times acted in accordance with the standards of care appropriate under the circumstances.

### SEVENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims may be barred, in whole or in part, due to the doctrines of res judicata, waiver, release, fraud, estoppel, laches, avoidable consequences, and/or unclean hands.

7

## EIGHTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, to the extent that Plaintiff failed to mitigate, minimize, or avoid any damages, or failed to preserve any rights of recovery against others who may have been responsible for the losses or damages alleged.

## NINTH AFFIRMATIVE DEFENSE

Plaintiff's claims as to JSK are barred by illegality.

## TENTH AFFIRMATIVE DEFENSE

Plaintiff's claims as to JSK are barred, in whole or part, by contributory negligence.

## ELEVENTH AFFIRMATIVE DEFENSE

The causes of action asserted in the Complaint, and any damages alleged, are barred, in whole or in part, because to the extent that employees of JSK committed any actionable acts or omissions (which JSK expressly denies), such acts or omissions were committed outside the scope of authority conferred by JSK.

## TWELFTH AFFIRMATIVE DEFENSE

The causes of action asserted in Plaintiff's Complaint, and any damages (which JSK expressly denies) are barred, in whole or in part, because the TVPA and/or TVPRA is unconstitutionally vague or ambiguous.

## THIRTEENTH AFFIRMATIVE DEFENSE

The causes of action asserted in Plaintiff's Complaint, and any damages claimed (which JSK expressly denies) are barred, in whole or in part, because any damage, loss, or liability must be reduced, diminished, and/or barred in proportion to any wrongful conduct and/or voluntary conduct and/or assumption of the risk of Plaintiff and/or third parties.

## FOURTEENTH AFFIRMATIVE DEFENSE

Plaintiff has failed to join a necessary or indispensable party without whom this action cannot proceed, including but not limited to the unidentified alleged traffickers.

## FIFTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claim for punitive damages fails because JSK did not act with the requisite conduct to justify the imposition of punitive damages.

## SIXTEENTH AFFIRMATIVE DEFENSE

Plaintiff has not properly pleaded a claim for attorney's fees and/or is not entitled to attorney's fees.

## SEVENTEENTH AFFIRMATIVE DEFENSE

JSK was not a "perpetrator" or "beneficiary" of human and/or sex trafficking pursuant to the TVPA and/or TVPRA.

## EIGHTEENTH AFFIRMATIVE DEFENSE

JSK did not knowingly benefit from any human and/or sex trafficking that occurred at 3203 US Highway 1, Lawrenceville NJ 08648.

## NINETEENTH AFFIRMATIVE DEFENSE

JSK did not have actual knowledge or constructive knowledge of any human and/or sex trafficking that occurred at 3203 US Highway 1, Lawrenceville NJ 08648.

## TWENTIETH AFFIRMATIVE DEFENSE

JSK did not participate in any venture related to any human and/or sex trafficking that occurred at 3203 US Highway 1, Lawrenceville NJ 08648.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

The Complaint does not describe the claims made with sufficient particularity to enable JSK to determine what defenses it may have in response to the Complaint.  JSK therefore reserves

9

the right to assert all defenses which may be pertinent to the Complaint once the precise nature of

such claims is ascertained through discovery.

**WHEREFORE**, JSK respectfully requests that this Court enter judgment in JSK's favor

dismissing the Complaint with prejudice and awarding JSK costs of suit, fees, and other relief as

the Court deems just and proper.

RIKER DANZIG LLP

By:    _____

PETER M. PERKOWSKI JR., ESQ.
pperkowski@riker.com
One Speedwell Avenue
Morristown, NJ  07962-1981
Telephone: (973) 538-0800

Attorneys for Defendant,
JSK Princeton, LLC

Dated:  December 6, 2024

10

## DEMAND FOR JURY TRIAL

JSK respectfully requests a trial by jury with respect to all issues so triable.

RIKER DANZIG LLP

By: _____

PETER M. PERKOWSKI JR., ESQ.
pperkowski@riker.com
One Speedwell Avenue
Morristown, NJ  07962-1981
Telephone: (973) 538-0800

Attorneys for Defendant,
JSK Princeton, LLC

Dated:  December 6, 2024

## CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 11.2

Peter M. Perkowski Jr., Esq. of full age, hereby certifies in accordance with Local Civ. R. 11.2 that to the best of my knowledge, the matter in controversy is not the subject of any other action pending in any court, or of any pending arbitration or administrative proceeding. I am further presently aware of the names of no other parties that should be joined in this action.

I certify that the foregoing statements made by me are true. I further certify that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

By: _____

PETER M. PERKOWSKI JR., ESQ.

Dated:  December 6, 2024

11

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this date, I caused a true and correct copy of Defendant JSK Princeton, LLC's Answer and this Certificate of Service to be filed via ECF and thereby served on all counsel of record.

I certify under penalty of perjury that the foregoing statements made by me are true. I further certify that I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

By:        _____
           PETER M. PERKOWSKI JR., ESQ.

Dated:  December 6, 2024